Merrill MASON

v.

**WADE & SEARWAY CONSTRUCTION CO., et al.**

Supreme Judicial Court of Maine.

Argued May 1, 1995.

Decided June 12, 1995.

James J. MacAdam (orally), McTeague, Higbee, Libner, MacAdam, Case & Watson, Topsham, for employee.

Keith A. Powers, Nelson J. Larkins (orally), Preti, Flaherty, Beliveau & Pachios, Glenn H. Robinson, Thompson & Bowie, Richard J. Kelly, Kelly & Chapman, Kevin G. Anderson, Troubh, Heisler & Piampiano, Portland, for employer.

Before ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

The employee, Merrill Mason, appeals from a decision of the Workers' Compensation Commission denying his petition to fix payment of medical expenses after finding that those expenses were not causally related to a work-place injury. Mason contends that because the employer filed a memorandum of payment accepting responsibility for the incapacity to which the medical expenses were related, and failed to file a timely notice of controversy, thereby accepting liability for Mason's incapacity, it must also be liable for the medical costs directed toward ending that incapacity. 39 M.R.S.A. § 51–B(7) (1989).[1] We agree, and vacate the Commissioner's decision.

On February 6, 1987, Mason suffered a work-related injury while employed by Wade & Searway Construction Company. He was incapacitated and received workers' compensation benefits for his time lost from work

---

1. Title 39 has been repealed and replaced by Title 39–A. *Maine Workers' Compensation Act of 1992*, P.L.1991, ch. 885, § A–7 (effective January 1, 1993). Because this proceeding was pending on the effective date of Title 39–A, however, this appeal is governed exclusively by former Title 39. *Riley v. Bath Iron Works*, 639 A.2d 626, 627–28 (Me.1994).

resulting from that injury. He later returned to work. In August 1989, Mason suffered a nonwork injury while loading laundry into a washing machine, resulting in his incapacity. After the laundry incident, Mason underwent back surgery and then a "work hardening" physical therapy program that ultimately resolved his incapacity to work. In 1990, Wade & Searway filed a memorandum of payment accepting liability for one-third of Mason's incapacity, beginning on August 28, 1989. No notice of controversy was ever filed.

Mason filed a petition for review of incapacity seeking an increase from one-third to full incapacity benefits, and also filed a petition to fix medical costs for the physical therapy and work-hardening program. Wade & Searway also filed a petition for review, contending that Mason's incapacity had ended. Finding that Mason had been restored to full work capacity as a result of the surgery and work-hardening treatment, the Commissioner ordered close-ended total incapacity benefits beginning on August 28, 1989, and ending on January 6, 1991. The Commissioner made the following finding:

> [i]t is clear that whatever was incapacitating Mr. Mason as of August 29, 1989, the date [Wade & Searway] agreed to pay Mr. Mason a partial benefit for his alleged incapacity, still continued to be a contributing cause of his incapacity when he filed his Petition for Review of Incapacity on June 28, 1990 seeking to increase that amount; since there is no other work-related injury which I find causally related to any incapacity suffered by Mr. Mason after August 29, 1989, I reluctantly find that ... [Wade & Searway] is responsible for whatever percentage of incapacity Mr. Mason suffered subsequent to August 29, 1989.

The Commissioner denied Mason's petition for the payment of the work-hardening program, however, concluding that "[s]ince Mr. Mason's surgery was not causally related to any work injury, the work hardening program is not causally related to any work injury." Mason filed a motion for findings of fact and conclusions of law, which the Com-

missioner denied. The Appellate Division failed to resolve Mason's appeal prior to January 1, 1994, and we granted Mason's petition for appellate review pursuant to 39-A M.R.S.A. § 322 (Supp.1994).

39 M.R.S.A. § 51-B(7) (1989) provides, in pertinent part:

> If the employer, prior to making payments under subsection 3,[2] controverts the claim to compensation, he shall file with the commission, within 14 days after an event which gives rise to the obligation to make payments under subsection 3, a notice of controversy in a form prescribed by the commission....

> If, at the end of the 14-day period in subsection 3 ... the employer has not filed the notice required by this subsection, he shall begin payments as required under [that] subsection[ ]. In the case of compensation for incapacity under subsection 3, he may cease payments and file with the commission a notice of controversy, ... no later than 44 days after an event which gives rise to an obligation to make payments under subsection 3. Failure to file the required notice of controversy prior to the expiration of the 44-day period, ... constitutes acceptance by the employer of the *compensability of the injury or death*....

(Emphasis added.) Pursuant to section 51-B(7), failure to file a timely notice of controversy constitutes an acceptance of the employee's claim of injury and the employer may not contest the work-relatedness or extent of the injury without filing a petition for review. *Id.; Wentworth v. Manpower Temporary Servs.*, 589 A.2d 934, 937 (Me.1991); *Stickles v. United Parcel Serv.*, 554 A.2d 1176, 1180 (Me.1989). As we stated in *Wentworth*,

> [t]he employer who lets the 44-day period lapse is in default under the early-pay system, the employee is given the benefit of having established as true the facts necessary to sustain the employee's entitlement to compensation as of the time of the claim, and *the employer is bound by the determination of those facts necessarily*

---

**2.** Subsection (3) addresses payment of incapacity benefits. 39 M.R.S.A. § 51-B(3) (1989).

*implicit in the compensability of the injury under the Act.*

589 A.2d at 937 (emphasis added). The Commissioner in this case determined correctly that Wade & Searway accepted liability for "whatever was incapacitating Mr. Mason as of August 29, 1989." Accordingly, Mason contends because his claim is for medical expenses directed at reducing that incapacity, Wade & Searway must be deemed to have accepted liability for those expenses.

Wade & Searway contends that notwithstanding its legal obligation to compensate Mason for his incapacity pursuant to section 51–B(7), Mason must still prove an actual causal relationship between the work injury and the work hardening program to prevail on a petition seeking medical compensation. The Commissioner agreed with Wade & Searway and concluded that neither Mason's surgery nor the work hardening program was causally related to his work injury. Accordingly, she denied Mason's petition to fix medical costs.

The Commissioner's factual finding of no causal connection between any work injury suffered by Mason and his surgery and work-hardening program, even if it is correct on the evidence presented before the Commission, does not relieve Wade & Searway of its obligation to pay Mason's medical expenses related to his incapacity. Section 51–B(7) provides that failure to file a notice of controversy after the employee makes a claim for incapacity, will constitute "acceptance by the employer of the *injury*." (Emphasis added.) An employee suffering from a compensable injury under the Act is entitled to medical expenses. 39 M.R.S.A. §§ 51(1), 52 (1989). Because, as noted by the Commissioner, Wade & Searway has accepted liability for the post August 28, 1989 incapacity, it is obligated to pay the cost of the physical therapy and work hardening medical expenses that the Commissioner found were directed toward and successfully ameliorated that incapacity. It was error for the Commissioner to deny Mason's petition for payment of those expenses. Accordingly, we vacate the decision.

The entry is:

Decision of the Workers' Compensation Commission vacated. Remanded to the Workers' Compensation Board for further proceedings consistent with the opinion herein.

All concurring.