# Rose Apice vs. American Woolen Company, Inc.

### AUGUST 9, 1948.

Present: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

426

BAKER, J. These are two petitions, one for review and the other for additional medical expenses, brought under the provisions of the workmen's compensation act, general laws 1938, chapter 300. When the petitions came up for hearing in the superior court on an appeal by the petitioner from an adverse decision in the department of labor certain questions of law were raised by the parties which in the opinion of the trial justice were of such doubt and importance and so affected the merits of the controversy that they ought to be determined by the supreme court before further proceedings were taken. Therefore the trial justice, acting under the provisions of G. L. 1938, chap. 300, art. III, §12, duly certified such questions to this court for determination.

It appears that the petitioner suffered an injury by accident arising out of and in the course of her employment with the respondent on February 15, 1944. A preliminary agreement approved March 15, 1944 was entered into by the parties. Subsequently the respondent filed a petition for review which was heard by Clifford J. Cawley, hearing officer, on November 9, 1944. He rendered a decision in writing dated December 21, 1944 which was approved by the chief of the division of workmen's compensation and by the director of labor. This decision ordered the payment of compensation to the petitioner suspended, and no appeal

from that decision was taken. Thereafter on September 3, 1946 the petitioner filed a petition for additional medical expenses and on September 18, 1946 a petition for review. Both these petitions were heard by Clifford J. Cawley as hearing officer on December 18, 1946. They were both denied and dismissed by one written decision dated October 9, 1947 and approved by the chief of division and by the director of labor. From that decision a claim of appeal was duly filed by the petitioner to the superior court and it constitutes the claim of appeal before that court in the present proceeding.

The questions certified are as follows:

"I. Is the decision of Clifford J. Cawley, Hearing Officer, ordering suspension of compensation, dated December 21, 1944, and approved by Edward I. Friedman, Chief of the Division of Workmen's Compensation, and William L. Connolly, Director of Labor, made after a hearing held by said Clifford J. Cawley and following consideration by Mr. Friedman of the evidence and arguments presented in a proceeding involving review of a preliminary agreement to pay compensation, previously approved by the Director of Labor, valid and effective?

"II. Is the decision of Clifford J. Cawley, Hearing Officer, denying employee's petition to review, dated October 9, 1947, and approved by Edward I. Friedman, Chief of the Division of Workmen's Compensation, and Joseph T. Cahir, Acting Director of Labor, made after a hearing held by said Clifford J. Cawley and following consideration by Mr. Friedman of the evidence and arguments presented, valid and effective?

"III. Was an Appeal perfected to the Superior Court by the petitioner having filed in the office of the Director of Labor a Claim of Appeal from the decision of Clifford J. Cawley, Hearing Officer, dated October 9, 1947, and approved by Edward I. Friedman, Chief of the Division of Workmen's Compensation, and Joseph T. Cahir, Acting Director of Labor, made after a hearing held by said Clifford

J. Cawley and following consideration by Mr. Friedman of the evidence and arguments presented?"

The submission of the above questions undoubtedly was caused by certain language which we used in the case of *Berkshire Fine Spinning Associates, Inc.* v. *Label*, 74 R. I. 6. After referring to a certain hearing and decision by a senior industrial examiner in the office of the director of labor in a petition under the workmen's compensation act, and the power of the examiner to so act, we stated: "We have been unable to find in the workmen's compensation act prior to its amendment by P. L. 1947, chap. 1870, any provision which expressly or by necessary implication vests such power in that official or which authorizes either the director of labor or the chief of the division to delegate it to him. Therefore, notwithstanding the approval of the examiner's written decision by the director and the chief of the division, we are constrained to hold that it is without legal force or effect. But it does not necessarily follow that the proceeding which was heard *de novo* in the superior court on appeal from that decision must be held void."

The matters now argued to us in connection with the proper determination of the above certified questions were not raised or argued in the *Berkshire Fine Spinning Associates, Inc.* case and the above-quoted language from that case is in the circumstances therein in the nature of *dictum*. In the instant case the petitioner maintains that all the questions submitted should be answered in the negative. She argues that no statutory authority can be found expressly or by necessary implication providing for hearing officers in the department of labor and allowing them to conduct hearings in compensation petitions and make reports or decisions after so doing; that the director of labor or the chief of the division of workmen's compensation, who are authorized to hear and decide cases, cannot properly delegate such powers to hearing officers so called; and that the latter cannot be considered even as *de facto* officers, thus validating and making legal their acts. On

the other hand, the respondent and the state and its department of labor, which filed a brief as *amici curiae,* contend that the questions should receive affirmative answers. They take a position which is on all points diametrically opposed to that of the petitioner.

Whatever officer in the department having control over labor matters may have had authority under P. L. 1928, chap. 1207, under the administrative code acts of 1935 and 1939, and under the revision of G. L. 1938 or other pertinent acts, to hear and determine certain types of compensation cases, that question in our opinion was settled by the passage of P. L. 1941, chap. 1053. Referring to that act we stated in the *Berkshire Fine Spinning Associates, Inc.* case: "The petition in the first proceeding was heard and decided by the chief of the division of workmen's compensation and his decision was approved by the director of labor. Under public laws 1941, chapter 1053, that official is expressly given 'supervision over the enforcement of the provisions of' the workmen's compensation act, 'and shall perform such other duties as may be prescribed by the director of labor.' That language scarcely needs construction. By it the legislature, in our opinion, clearly intended to vest in the chief of the division of workmen's compensation, subject to rules and regulations prescribed by the director, the power to hear and decide questions arising under the workmen's compensation act."

We find no specific reference to hearing officers by that title or to the nature of their powers in compensation proceedings either in the workmen's compensation act, as amended, or in any other pertinent act of the general assembly which has come to our attention. However, what prompted their appointment and what duties they perform seem reasonably clear from the evidence submitted in this cause. It appears that the chief of the division of workmen's compensation eventually needed help in the performance of his duties because of the volume of compensation matters with which he was confronted. This

situation was caused by the fact that many industrial plants in this state were engaged in performing war contracts and were operating long hours; that there was a shipbuilding yard here; that government bases in Scotland, Iceland and Ireland came under the jurisdiction of this state in connection with construction work; and that because of the war there was generally great industrial activity. Evidence was introduced showing that between June 14, 1945 and November 30, 1947 there were 2,567 compensation petitions of various kinds heard in the department of labor, that is, about 1,000 a year, which was testified to as a fair average figure.

As a result of these conditions, on April 16, 1942 Clifford J. Cawley was appointed senior industrial examiner by the director of labor. In December 1943 the classification of senior industrial examiner was changed to that of hearing officer by the civil service commission. That body, after a hearing, sent to the governor for his approval this new classification which set out, among other things, the qualifications and duties of such hearing officer in the division of workmen's compensation. The governor signed this classification December 31, 1943 and Clifford J. Cawley was forthwith appointed a hearing officer as aforesaid. He was such a hearing officer on December 21, 1944 and on October 9, 1947 when the decisions referred to in the submitted questions were rendered. It is to be noted, however, that no legislative act was ever passed expressly authorizing the appointment of hearing officers as such or setting out their duties and powers, as was done by P. L. 1941, chap. 1053, in the case of the chief of the division of workmen's compensation.

Our duty here is merely to answer the questions which have been submitted. In our opinion it is clear that, in the absence of statutory provision, the civil service commission had no power to create such new offices theretofore nonexistent. No authority for the exercise of that power has been brought to our attention. That com-

mission therefore could not lawfully create the position of hearing officer. The fact that the director of labor desired such action, that the appropriation for said officer was included in the annual estimate of the department of labor for the consideration of the budget director, and that the general assembly later passed appropriation bills which contained specific salaries for such hearing officers, in our judgment is not enough to supply the authority to create such offices which the legislature had not originally created; nor can an otherwise invalid situation be rectified in that manner.

It is also urged that the decisions in question were made by the chief of the division of workmen's compensation and were therefore valid in accordance with the construction placed by us upon chap. 1053, *supra*, in the *Berkshire Fine Spinning Associates, Inc.* case. However, it is our opinion that in the circumstances the decisions in question were in fact those of the hearing officer, Clifford J. Cawley, and not of the chief of the division. It cannot be questioned that the hearing officer was in these instances sitting in a *quasi* judicial, if not a judicial capacity. He saw the witnesses, heard them testify, heard the arguments of counsel, if any were made, and he was the person who exercised his discretion and judgment in deciding the controversy before him. It is true that under the practice of the division of workmen's compensation the decision of the hearing officer had to be approved by the chief of the division before it was filed and made public, but such approval was for those purposes only and cannot be construed as making the decision that of the chief of the division.

In the instant cause several acts of the general assembly, in particular the administrative code acts of 1935 and 1939, have been called to our attention as furnishing the necessary authority for the creation of the position of hearing officer and the holding of his position valid. It is unnecessary and not possible to discuss these acts in detail. However, we are unable to agree with the respondent that there is suffi-

cient language in such acts to legally provide that effect. It is certainly not there expressly and in our opinion cannot be read into them by necessary implication, especially when it is considered that the legislature in conferring authority on the chief of the division did so expressly in P. L. 1941, chap. 1053.

It is further contended by the respondent that by virtue of certain provisions in said above-mentioned statutes the decisions were made by a duly authorized agent of the director of labor, that is to say, the hearing officer, to whom power to hear and decide cases had been actually and lawfully delegated or to whom such power had been necessarily delegated by implication of law. We think that in the circumstances of this case the above contention is not sound.

Undoubtedly the statutes in question are to be liberally construed and they give broad powers to the director of labor and to the chief of the division of workmen's compensation in connection with the appointment of assistants and the delegation to them of certain authority. However, as the power involved in the submitted questions, that is, the power to hear and determine, is at least *quasi* judicial, it cannot lawfully be redelegated when once given by legislative authority only to particular officers. See *Silver Hook Road* v. *Greene*, 12 R. I. 164; *Town of East Greenwich* v. *Guenond*, 32 R. I. 224. In our opinion the statutory power of the director of labor to appoint assistants and subordinates clearly means the appointment of persons to assist in carrying out ministerial and purely administrative duties in the department of labor, and does not include the power to create such *quasi* judicial offices or to redelegate his own *quasi* judicial powers to such hearing officers. Such creation and appointment in our judgment should be made under authority conferred by an act of the general assembly.

In this connection we are of the opinion that P. L. 1947, chap. 1870, which was approved April 28, 1947, is not before us and has no application under the particular

facts and circumstances of this case. That act contains in part the following language: "The director of labor or the chief of the division of workmen's compensation or any authorized representative of either shall hear such witnesses as may be presented by each party, shall decide the merits of the controversy in a summary manner, and shall file his decision, in writing together with his order to the parties in accordance therewith."

While the actual decision involved in the second question submitted was made October 9, 1947, after the passage of the above act, the hearing on which that decision was based was held December 18, 1946, prior to the passage thereof. Such act, therefore, cannot be considered in determining whether the hearing in question was validly held by Clifford J. Cawley. If he did not have lawful authority by statute to hold such hearing on December 18, 1946 the passage of the act thereafter, in our opinion, cannot in and of itself validate that hearing or the later decision. Therefore, in the circumstances we are not called upon to determine and do not in any way pass upon the scope, intent or meaning of chap. 1870, *supra.*

We have been unable to discover any other statute and none has been called to our attention under which it can be claimed that either expressly or by necessary implication Clifford J. Cawley was lawfully appointed to the office of hearing officer in the division of workmen's compensation and was given proper power and authority to conduct the hearings and make the decisions referred to in the submitted questions. In view of the entire situation, as disclosed after a consideration of the pertinent facts and law bearing upon his status as hearing officer in the division of workmen's compensation, we find that he was not a *de jure* officer.

There now remains the question of whether he was a *de facto* officer. In *Murphy* v. *Moies,* 18 R. I. 100, at page 102, the court makes the following statement: "The definition of a *de facto* officer most commonly accepted is that of Lord Ellenborough, in *Rex* v. *Corporation of the Bedford*

*Level,* 6 East, 356: 'One who has the reputation of being the officer he assumes to be and yet is not a good officer in point of law.' This reputation may be founded on color of title or on possession of any office as acquiesced in by the public. The recognition of the acts of such officers rests upon the ground of public policy. *Petersilea* v. *Stone,* 119 Mass. 465. It is for the protection of persons dealing with those who are publicly exercising official functions which are generally acquiesced in and so understood to be valid." See also *Angell* v. *Steere,* 16 R. I. 200.

In our judgment, after a consideration of all the facts and circumstances appearing herein, Clifford J. Cawley comes within the above definition in respect to his acts referred to in the questions submitted. We find that as to the performance of such acts he was a *de facto* officer. He clearly was acting under color of title and authority either from the director of labor, who appointed him, or the chief of the division of workmen's compensation, who had statutory authority to hear and decide compensation matters. Further, no *de jure* officer was carrying out the duties of hearing officer or filling that position. Also for a considerable period of time members of the public had acquiesced in his possession of such office and he had heard and decided many compensation matters. In the circumstances public policy supports the recognition of his acts as such officer. Therefore, since Clifford J. Cawley was a *de facto* officer such of his acts and decisions as hearing officer as were not appealed from to the superior court stand as lawful and valid acts and decisions. It follows that the hearing of November 9, 1944 and the decision of December 21, 1944, which decision was not appealed from, stand as valid and we answer the first question submitted in the affirmative.

As to the second question, involving the hearing on December 18, 1946 and the decision of October 9, 1947, there is an appeal to the superior court and a direct attack in this very proceeding on the authority of the hearing

officer to act *de jure*. Hence this is to be distinguished from a mere collateral attack as was the case involving his decision of December 21, 1944. From what has been previously discussed it follows that his acts, including the hearing and decision on December 18, 1946 and October 9, 1947 respectively, as involved in this second question, were null and void and the answer thereto must therefore be in the negative.

The third question is whether the petitioner perfected an appeal to the superior court from the hearing officer's decision referred to in the second question. Considering the situation thus presented in a narrow and technical sense perhaps no appeal should lie from such decision, since we have just held that it was null and void when directly attacked as above set out. However, in the *Berkshire Fine Spinning Associates, Inc.* case we were faced with a condition very similar although not precisely like the one raised by the facts herein. In that case we had an appeal from an invalid hearing in the department of labor under circumstances which also showed that the petition originally should have been brought in the superior court. We allowed the appeal, stating: "Ordinarily where a proceeding in the tribunal of first instance is held to be void there is nothing left to be reviewed on appeal. Here, however, the removal of the proceeding to the superior court by the attempted appeal called for a trial *de novo*. The parties were given the full benefit of such a trial without regard to the findings of fact or conclusions of law made by the examiner in the proceedings before him. In other words, the parties were accorded the fullness of the remedy to which they would have a right if the law required petitioner to bring its petition to enforce the order of August 26, 1943 originally in the superior court."

We are of the opinion that the general principles laid down in the above-cited case govern the question before us here. In compensation cases reasonable expedition and avoidance of unnecessary technicalities are desirable ob-

jectives. While it would be possible to have the petition involved in the third question reheard in the department of labor by a proper and duly authorized officer this step in the circumstances seems burdensome and unnecessary. An appeal from the department of labor brings up the entire matter for a hearing *de novo* before the superior court, which does not then act as a reviewing or appellate court in any sense. Thus the rights of all parties are fully protected in such a new hearing in that court. It is our opinion that considering the existing circumstances the appeal referred to in the third question was, for all practical purposes, perfected to the superior court which has jurisdiction to hear it *de novo*. The third question submitted is answered in the affirmative.

The papers in the case with our decision certified thereon will be sent back to the superior court.

*William G. Grande, Fred Brosco, Benedetto Cerilli,* for petitioner.

*Worrell & Hodge, Lee A. Worrell,* for respondent.

*John H. Nolan,* Attorney General, *Guillaume L. Parent,* Assistant Attorney General, for State; *Francis A. Manzi,* for Department of Labor.